IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK: SYRACUSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE of NEW YORK *ex rel*. Dr. HELENE BERNSTEIN, MD, PhD,<br><br>    *Plaintiff*,<br><br>              v.<br><br>Dr. ROBERT SILVERMAN, UNIVERSITY OB/GYN ASSOCIATES, INC., CROUSE HEALTH HOSPITAL, INC., & CROUSE HEALTH SYSTEM, INC.,<br><br>    Defendants. | Civil Action No. 5:20-cv-630 |

U.S. DISTRICT COURT – N.D. OF N.Y.

FILED

Jan 30 - 2025

John M. Domurad, Clerk

## ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION

In accordance with Rule 34 of the Federal Rules of Civil Procedure, the undersigned parties jointly, by and through their counsel, having expressed their mutual intent to seek the discovery of electronically stored information ("ESI"), hereby stipulate and agree that the following terms and conditions shall govern and supplement any local rules regarding the search, retrieval and production of ESI in this matter (hereinafter, the "Protocol").

## I.    DEFINITIONS

A.    "Bates Number"" means a unique alphanumeric identifier associated with every physical sheet of paper, electronic file, electronically stored TIFF image, or other tangible thing, consisting of (1) an alphabetic portion identifying the producing party and/or other characteristics of the production; and (2) a numeric portion incremented according to a scheme defined at the producing party's discretion to ensure that the alphanumeric identifier for each physical sheet of paper, electronic file, electronically stored TIFF image, or other tangible thing is unique. The alphanumeric identifier shall be no more than sixteen (16) characters in length.

B.    "Document(s)" is defined to be synonymous in meaning and equal in scope to the usage of the term in Rule 34(a) of the Federal Rules of Civil Procedure and includes ESI existing in any medium from which information can be translated into reasonably usable form, including but not limited to e-mail and attachments, word processing documents, spreadsheets, graphics, presentations, images, or text files.

C.    "ESI" (electronically stored information) is defined as files, documents, or other data that are stored on computers, file servers, the internet, or any other devices or media.

D.    "Extracted Text" means the text extracted from a Native File and includes all header, footer, and document body information.

E.    "Hard Copy Document" means a Document kept in physical form, as opposed to electronic form, in the ordinary course of a party's business.

F.    "Load File" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load File will also contain data relevant to the individual documents, including extracted and user-created Metadata, coded data, as well as OCR or Extracted Text. A separate Load File linking corresponding images will also be provided if productions are made in Static Image format.

G.    "Metadata" means (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system; and (iii) information from e-mails, such as author, recipient, cc, bee, sent date and subject.

2

H.     "'Native File" means ESI in the original file format of the application in which such ESI is normally created, viewed, or modified.

I.     "OCR" means the optical character recognition text that is generated by software used in conjunction with a scanner that is capable of reading image-based documents and making such documents searchable.

J.     "Producing Party" means the party producing documents.

K.     "Requesting Party" means the party serving requests for documents pursuant to Rule 34 of the Federal Rules of Civil Procedure ("Document Requests").

L.     "Spreadsheet" means an electronic file that displays multiple cells that together make up a grid consisting of rows and columns, each cell containing either alphanumeric text or numeric values, including, but not limited to, files created with Microsoft Excel.

M.     "Static Image" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format (TIFF) image is an example of a Static Image.

## II.     PURPOSE

This order will govern discovery of electronically stored information ("ESI") (including scanned hard-copy documents) in the above-captioned matter as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines of the Discovery of Electronically Stored Information, and any other applicable orders and rules. The parties agree that they may apply to the Court to make changes to this ESI Protocol, and they retain the right to utilize all Federal Rules of Civil Procedure to obtain discovery and to enforce discovery requests.

## III.     COOPERATION

The Parties are expected to cooperate and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

## IV.    CUSTODIANS

A.    Upon entry of this Protocol, each Party shall, in good faith, conduct a reasonable investigation to determine which custodians, under its control are most likely to have information relevant to the litigation ("Custodians"). For purposes of this Protocol, Custodian includes individuals with ownership, custody, or control over relevant ESI. The Parties will be transparent and cooperative in their efforts to identify appropriate Custodians. The Parties must be prepared to discuss the reasonableness of such efforts.

1.    Absent a showing of good cause and subject to reasonableness and good faith, the Parties may use search terms for the purpose of identification and production of documents and data at any time in the litigation, so long as it is reasonable and in good faith to obtain discoverable documents and data. The search terms shall be narrowly tailored to particular issues so that they are both relevant and not unduly burdensome to the Producing Party.

B.    Any search under this section will necessarily include, without limitation, any and all e-mails of a Custodian which are likely to contain relevant ESI.

C.    The Parties agree that search terms shall be used to identify the ESI of the Custodians identified pursuant to this Order that is to be reviewed for responsiveness (as well as for confidentiality and privilege); provided, however, that search terms need not be used for the identification of information that can be more effectively identified via alternate means.

D.    The Parties further agree that if search terms beyond the Initial Search Terms appear to be necessary to obtain discoverable information, the Parties will  work in good faith to identify further appropriate search terms ("Supplemental Search Terms"), if any. To the extent Supplemental Search Terms beyond the Initial Search Terms, if any, are required, ESI containing one or more of these Supplemental Search Terms will be captured, preserved, reviewed for

responsiveness (as well as confidentiality and privilege) and produced, if appropriate, pursuant to this Protocol.

## V.     PRESERVATION

The parties are directed to discuss their preservation obligations and needs and agree that preservation of potentially relevant ESI (e.g. email, spreadsheets, databases, etc.) will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, it is ordered that:

A.     The Parties have not completed the exchange of lists of the types of ESI they believe should be preserved nor determined the Custodians, or general job titles or descriptions of all the Custodians, for whom they believe all ESI should be preserved. The Parties shall add or remove Custodians as reasonably necessary.

B.     In terms of preservation, if there is a need for forensic images of servers, databases, computers or cell phones, that will be addressed by the Parties.

## VI.    SEARCH AND IDENTIFICATION

It is ordered that in responding to an initial Federal Rule of Civil Procedure 34 request, or earlier if appropriate, the Parties will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is likely not subject to discovery. The Parties are permitted to use reasonable search methods to narrow down the ESI to be reviewed for production in discovery (e.g. search terms, technology assisted review, deduplication, elimination of correspondence with attorneys, client self-collection efforts, etc.). However, the parties must be prepared to discuss the reasonableness of such efforts.

## VII.   PRODUCTION FORMATS

The Parties are to produce the ESI in accordance with **Exhibit A** and **Exhibit B** and according to the following terms:

A.    The Parties agree to produce, subject and in addition to other requirements of Exhibit A and Exhibit B, the Parties have agreed to produce ESI in: TIFF, native, PDF, or a combination thereof file formats.[1] If particular ESI warrants a different format, the Parties will cooperate to arrange for the mutually acceptable production of ESI;[2]

B.    Color: Documents or ESI containing color need not be produced initially in color. If an original document or ESI item contains color markings and a Receiving Party reasonably believes it is necessary to see those markings in their original color to understand the meaning or content of the document, then a Receiving Party may, in good faith, request that the document or ESI item be produced in its original colors, and the Producing Party shall within seven (7) days produce such document in the original color format. The production of documents and/or ESI in color shall be made in TIFF format or in an alternative format, such as single page JPEG format, that provides sufficient quality for the review of these documents and/or ESL All requirements for productions stated in this Order regarding productions in TIFF format would apply to any productions of documents and/or ESI in color made in such an alternative format;

C.    If either Party produces documents or ES1 that contain information that is described by "codes," such as abbreviations or internal nomenclature, the meaning of which could not be reasonably determined by the Requesting Party, the Requesting Party may identify the specific document and encoding (by Bates Number and cell/location) that contains the code and request that the Producing Party provide a written description of the meaning of the code within seven (7) business days without such request counting towards the Requesting Party's discovery limitations.

---

[1] To the extent production is not in native format, the Parties should consider an agreement on metadata fields to be produced.

[2] By way of example, the Parties could agree to produce excel ESI in native format while providing other ESI in TIFF format with conventional production numbering (PI 00001) and load files.

If the Producing Party objects to producing such information, the Parties will meet and confer before seeking Court intervention;

D.       Where a Party requests underlying information used to create a spreadsheet and a spreadsheet is provided to Requesting Party in response to a request for information and/or data, the Producing Party will produce the spreadsheet which contains the answer or response to the requested information and, in addition, all data which was utilized by the Producing Party in order to compile each responsive spreadsheet and, in addition, shall be produced in such a manner that all functional electronic links connecting the responsive document and data with documents from which the response was derived still function. This does not preclude the Producing Party from objecting to any request for production based upon any valid objection recognized by law including but not limited to that production of such underlying electronic information is unduly burdensome and/or irrelevant; and

E.       Microsoft "Auto" Feature and Macros: When feasible, "auto date" macros will be replaced with field codes during file imaging.

## VIII.  CONFIDENTIALITY

This order will be subject to the terms of any protective order entered either prior or subsequent to the entering of this order.

## IX.   MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

By:                                          /s/ *Darth M. Newman*
                                             Darth M. Newman NY Bar Number: 5682687
                                             Attorney for Plaintiff Relator
                                             Law Offices of Darth M. Newman LLC
                                             1140 Thorn Run Rd, # 601
                                             Coraopolis, PA 15108
                                             412-436-3443
                                             darth@dnewmanlaw.com

                                             Jessica L. Luksiewicz
                                             Thomas, Solomon Law Firm
                                             693 East Avenue
                                             Rochester, NY 14607
                                             585-272-0540
                                             jlukasiewicz@theemploymentattorneys.com
                                             *Counsel for Plaintiff Relator*

                                             /s/ *Laura Spring*
                                             Laura Spring
                                             Lippes Matthias LLC
                                             507 Plum Street - Suite 310
                                             Syracuse, NY 13204
                                             315-477-6293
                                             315-425-3693 (fax)
                                             lspring@lippes.com
                                             *Counsel for University Ob-Gyn Associates, Inc.*

                                             /s/ *Laura McLane*
                                             Laura McLane
                                             Natasha Dobrott
                                             Megan Corrigan
                                             McDermott Will & Emery LLP
                                             200 Clarendon Street
                                             Boston, MA 02116
                                             617-535-4410
                                             lmclane@mwe.com
                                             ndobrott@mwe.com
                                             mcorrigan@mwe.com

                                             Stacy Lutkus
                                             McDermott Will & Emery LLP
                                             One Vanderbilt Avenue
                                             New York, NY 10017
                                             212-547-5304
                                             salutkus@mwe.com
                                             *Counsel for Crouse Health Hospital, Inc. and Crouse*

*Health System, Inc.*

/s/ *David Burch*
David Burch
Kyra Ganswith
Barclay Damon LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, NY 13202
315-425-2788
315-425-8588 (fax)
dburch@barclaydamon.com
Kganswith@barclaydamon.com
*Counsel for Dr. Robert Silverman*

**IT IS SO ORDERED.**

BY THE COURT:  1/30/2025

Paul J. Evangelista
United States Magistrate Judge

## EXHIBIT A

## PROCESSING AND PRODUCTION PROTOCOL

A.    **ESI Production.**  With respect to processing and production of ESI, the Parties will comply with the following protocol:

1.    **TIFF Files to Be Standard Production.**  The Parties will produce all ESI in Group IV compressed single-page TIFF image format, with associated load files for Relativity or similar programs, which shall include a .dat file for native documents and metadata, .tiff/.jpeg for all images (all pictures/photographs shall be produced in color), and an image load file in Opticon (OPT) format.

> a.    The Parties shall produce fully extracted text (as available) in document- level text files that are appropriately identified with the TIFF images, or for those documents that do not have extracted text, OCR will be produced. The Parties may make reasonable requests for documents, such as spreadsheets, databases, or text files larger than 300 pages in size, to be produced in Native Format.

> b.    The load file shall contain the categories of metadata listed in Exhibit B. The Parties shall meet and confer with respect to the form of production for any audio and video files in non-standard formats. When redacting fielded data, the field in the load file shall indicate that content was redacted. For example, if an email subject is being withheld, the field in the load file shall state, "REDACTED."

> c.    Files will be named with consecutive numbers.

> d.    The metadata load file will contain the name of the file as it was saved in the ordinary course of business.

> e.    For e-mails with attachments and other container files such as .ZIP files, the metadata load file will contain "begin-attachment" and "end-attachment" values representing the low and the high consecutive numbers representing the names of the files in that attachment range or container file.

2.      **TIFF Settings**

     a.    Documents produced in TIFF format shall retain tracked changes, embedded comments, hidden text, and speaker notes. Comments, speaker notes, and hidden text should appear in the text files, unless redactions are necessary to remove privileged material.

     b.    The parties agree to exchange with their document productions information electronically identifying the confidentiality designation given to, and the custodians of, the ESI pursuant to any protective order entered in this case.

3.      **Production of Data**

     a.    Unless they require redaction, Excels and Access databases that contain comments and track changes, CVSs, spreadsheets, other similar files, and other files that are in a format that does not render to TIFF in a readable format shall be produced in native and will be accompanied by a single-page image placeholder. The placeholder shall indicate that the document was produced in native form and shall be endorsed with the document's bates number and confidentiality designation. The Parties agree to meet and confer in good faith regarding the production of structured data in other formats.

     b.    The Parties are only required to produce data from a database if it can be produced in a reasonably useable format. If a Party cannot produce the data in a reasonably useable format, the Parties will meet and confer in good faith to provide reasonable information requested and/or to work out an appropriate format for the data.

     c.    Production volume should be structured as the following:

          i.    "DATA" Directory-containing load files (.dat; .opt)

          ii.    "IMAGES" Directory - containing single-page, group IV, 300- DPI TIFF/JPEG files. Each sub-directory should not exceed more than 2,000 files.

          iii.    "NATIVES" Directory - containing produced native files. Each sub-directory should not exceed more than 2,000 files.

        iv.     "TEXT" Directory - containing document-level extracted text *I* OCR files. Each sub-directory should not exceed more than 2,000 files.

**4.    Production of Load Files**

    a.    A load file compatible with loading to the Relativity litigation support platform (.dat file for metadata, nativelink and textlink; .opt file for single- page .TIFF / JPEG records). The load file will contain links to extracted full text files, TIFF files, and where they occur, Native files.

    b.    The Parties shall meet and confer to the extent reasonably necessary to facilitate the import and use of the produced materials with commercially available e-discovery review platforms.

    c.    The list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI or that do not exist as part of the original metadata of a document.

**5.    Processing Specifications**

The preferred time zone of processing ESI is EST. The Producing Party shall consistently produce all ESI processed using the same time zone to the extent such production is feasible for the Producing Party.

**6.    Document Location**

Electronic documents should be produced in such fashion as to identify the location (i.e., the network file folder, hard drive, back-up tape or other location) where the documents are stored and, where applicable, the natural person in whose possession they were found (or on whose hardware device they reside or are stored). If the storage location was a file share or work group folder, that should be specified as well.

**7.    Production of Databases and Other Structured Data**

Generally, databases should be produced in a mutually agreeable data exchange format. To

determine the data that is relevant to the document requests, a list of databases and systems used to manage potentially relevant data should be provided with the following information. To the extent a database contains responsive and non-responsive information, only potentially responsive information needs to be disclosed:

- Database Name
- Type of Database
- Business Purpose
- A List of Standard Reports
- Field List
- Field Definitions (including field type, size and use)

Upon review of the list, the parties agree to meet and confer regarding the data to be produced from each source, if any, and the form(s) of the production thereof.

## 8. De-Duplication

A producing party may deduplicate a production vertically (*i.e.*, within individual custodians) or horizontally (*i.e.,* across different custodians) provided that horizontal deduplication will necessitate the inclusion of information for custodians for which the documents have been deduplicated as specified in the technical production specification attached).

### 9.    E-Mail Thread Analysis

E-mail thread analysis may be used to reduce the volume of e-mails reviewed and produced, provided that the Parties disclose such use. The produced e-mails must include all of the responsive information from a thread, including responsive attachments.

### 10.    Encrypted or Password-Protected ESI

For any ESI that exists in encrypted format or is password-protected, the Producing Party shall undertake reasonable efforts to provide the Parties a means to gain access to the files.

### 11.    Archive Files

For any archive files, (zip, jar, rar, gzip, TAR, etc.), all contents should be extracted from the archive with source pathing and family relationships maintained/captured. The archive container file does not need to be included in the production.

**B.    Native Files.** Absent special circumstances, PowerPoint Presentations source code, large diagrams, Excel files and/or .csv files, autocad files or other large engineering specific files should be produced in native format, unless they have redactions. Native Files should be provided in a self- identified "Natives" directory. Each Native File should be produced with a corresponding single-page TIFF placeholder image, which will contain language indicating that the document is being produced as a Native File. Native Files should be named with the beginning Bates number that is assigned to that specific record in the production. A "NativeLink" entry for each Native File should be included in the .DAT load file indicating the relative file path to each Native File on the production media. Native Files should be produced with extracted text and applicable metadata fields.

**C.    Native Redactions.** In the event that either Party finds the redaction of certain

14

documents in image form to be overly burdensome, they may elect to redact such documents in their native form. The produced documents must clearly indicate which portions have been redacted, and the searchable text provided must accurately reflect the contents of the document as produced.

**D.    Hard-Copy (or Paper) Documents.** In the event some documents exist in hard copy format only and are not available as ESI consistent with the definitions above, with respect to the production of these hard copy documents, the Parties shall produce the documents as follows:

**1.    Hard copy documents will be produced in electronic format.** Hard- copy documents shall be produced as image files with corresponding OCR text to the extent such documents are converted into electronic format. The Parties shall meet and confer to discuss documents that present imaging or formatting problems. To the extent exceptions to the foregoing are made, the Parties will meet and confer to discuss alternative production requirements, concerns and/or formats.

**2.    Document Unitization.** To the extent possible and on an ongoing basis, the Parties will endeavor to apply unitization practices consistent with the following description:

      a.    Each page of a hard copy document shall be scanned into an image and, if a document is more than one page, the unitization of the document and any attachments shall be maintained as it existed m the original when creating the image file.

      b.    For documents that contain affixed notes, the pages will be scanned once with the note(s) as they appear oh the page and once without the notes so all content is captured. These pages will be treated as part of the same document.

      c.    The relationship of documents in a document collection (e.g., cover letter and enclosures, e-mail and attachments, binder containing multiple documents, folder or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process. If more than one level

of parent-child relationship exists, documents will be kept in order, but all will be treated as children of the initial parent document. Such information shall be captured and produced in the metadata/coding load file in a manner that will allow the parent-child relationship among documents to be reconstituted by the Receiving Party in commercially available document management or litigation review software.

E.    **Control/Bates Numbering.**  The Parties will produce native files and static images with a legible, unique control number. For Native Files, the Control/Bates Number will be provided in the file name. For static images, the Control/Bates Number will be electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document. No other legend or stamp will be placed on the static image other than a confidentiality legend (where applicable), redactions (consistent with any protective order entered in this case), and the control number identified above. Confidentiality legends shall be "burned" onto the static image at a location that does not obliterate or obscure any information from the source document. The parties shall identify Native Files that are produced. Confidential designations can be added to the file name for Native Files identified as Protected Information pursuant to any protective order entered in this action.

F.    **File Naming Conventions.**  For Static Image productions, each page/image file shall be named with the unique control/bates number of the page of the Document, followed by the extension ".TIF". The Control/Bates numbering convention shall not contain any spaces, special characters or symbols other than a hyphen ( - ) or underscore ( _ ).

G.    **Privilege Logs.**  Parties will provide a log of all documents withheld on the basis of privilege, work product protection, or other privilege, as feasible, within ninety (90) days of a production or as otherwise agreed to by the Parties. Privilege log identification is not required for: 1) communications exclusively among any Party and its outside counsel in this case or 2) attorney

16

work product. For electronic documents, each Party may opt at its own discretion to create privilege logs using one of the methods set forth below. For Hard Copy Documents, each Party shall create privilege logs using the Standard Log described below.

       **1.**    **Automated Log.** An automated privilege log will be generated from the following metadata fields to the extent they exist, as electronic metadata associated with the original electronic documents. The log will be produced in native excel format.

> SUBJECT
> FILENAME
> AUTHOR
> SENDER/FROM
> RECIPIENTS/TO
> cc
> BCC
> SENT DATE/TIME; OR RECEIVED DATE/TIME
> FILE CREATED DATE/TIME
> FILE LAST MODIFIED DATE/TIME
> PRIVILEGE TYPE
> BEG BATES
> END BATES

The Producing Party may substitute a description of the communication where the content of the SUBJECT or FILE NAME field(s) may reveal privilege information but must indicate that the fields have been revised.

For each document, the Producing Party will provide the basis for the claim of privilege (attorney-client or work product) and indicate whether the document has been produced with redactions.

Should the Receiving Party in good faith have reason to believe a particular entry on the Automated Log does not reflect a privileged document, it may request a Standard Log for that entry, to be produced within fourteen (14) days of the request, or within such other reasonable time as the Parties may agree or the Court may order.

    **2.**   **Standard Log.** A standard privilege log, created manually, will include these standard fields: author/sender/from; recipients/to; cc; bee; date; privilege type; and a description sufficient to identify the subject of the document and the basis for the privilege assertion. The privilege log fields for e-mail strings will contain the information from the top e-mail in the e-mail string. The Producing Party shall also populate a field titled "Other Participants" with all other participants identified on the face of the document not already captured in the top e-mail of the e-mail string for each e-mail string which is withheld as entirely privileged.

**EXHIBIT B**

| FIELD | DESCRIPTION | SAMPLE DATA |
|---|---|---|
| **Bates Begin** | Bates number of the first page in the document. | ABC00000001 |
| **Bates End** | Bates number of the last page in the document. | ABC00000015 |
| **Family Begin** | Bates number of the first page in the document family. | ABC00000001 |
| **Family End** | Bates number of the last page in the document family. | ABC00000015 |
| **Page Count** | Number of pages produced. | 15 |
| **Custodian** | The name of the custodian of this document. | Doe, John |
| **All Custodians** | All Custodians of a document if deduplication is applied during data processing. Each custodian listed should be separated by a semi-colon (";") | Smith, Mary; Jones, Williams |
| **Record Type** | The type of record (e.g.; email, attachment) | Email |
| **Document Type** | Document type as identified by metadata associated with the native document ("Native Type") indicating the application that created the native document (e.g; Microsoft Excel; Gmail, Outlook Email, etc.): | Outlook Email |
| **Original Location Path** | | |
| **File Size** | Generally a decimal number indicating the size in bytes of a file. | 15896 |
| **From** | Author of the e-mail | Doe. John< jdoe@brown.com> |
| **To** | Recipient(s) of the e-mail | Smith. Mary <msmith @brown.com> Jones. Williams |

| cc | Copies of the e-mail | Brown, Jane <jbrown@brown.com> |
|---|---|---|
| **BCC** | Blind Copies of the e-mail | Doe. John  <jdoe@brown.com> |
| **E-Mail Subject** | Subject of the e-mail message | RE: Our Project |
| **Time Zone Processed** | The time zone the document was processed in. | Eastern Standard Time; EST |
| **Has Redactions** | Yes/No field that identifies documents that are redacted | Yes |

| **File Name** | Original file name of the document may contain the subject of the e-mail for e-mails | RE Our Project.msg MyAttachment.xlsx |
|---|---|---|
| **File Extension** | Original file extension of the document when i was collected | Msg |
| **FilePath_ALL** | Duplicative Original File Paths from deduplicated documents | \Doe, John\John@doe.com\Inbox |
| **DateTime Created** | US formatted date, Ex. MM/DD/YYYY hh:mm:ss AM/PM Date and time created (non-email documents) | 01/01/2001 05:12:24 PM |
| **DateTime Last Modified** | US formatted date, Ex. MM/DD/YYYY hh:mm:ss AM/PM Last modified date and time (non-email documents) | 01/01/2001 05:12:24 PM |
| **Email DateTime Sent** | US formatted date, Ex. MM/DD/YYYY hh:mm:ss AM/PM Email date and time sent | 01/01/2001 05:12:24 PM |
| **Email DateTime Received** | US formatted date, Ex. MM/DD/YYYY hh:mm:ss AM/PM Email date and time received | 01/01/2001 05:12:24 PM |
| **MD5Hash** | Hash value of individual record | AB1BA0AF1E6E4A009719464777F5A495 |
| **Author** | Author metadata value of loose file or attachment. | Doe, John |

| **Title** | Title metadata value of document | Today's Meeting |
|---|---|---|
| **Confidentiality** | Confidential Designation of document | CONFIDENTIAL |
| **Native Path** | This path contains the relative path pointing to a single native file associated with the record as stored in delivery. | NATIVES \ ABC00000001.msg |
| **Text Path** | This path contains the relative path pointing to a single text file associated with the record as stored in delivery. | TEXT\ ABC00000001.txt |