**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DR. HELENE BERNSTEIN, M.D., PhD., and
UNITED STATES OF AMERICA AND THE
STATE OF NEW YORK *ex rel* Dr. Helene
Bernstein, M.D., PhD.,

                     **Plaintiffs,**

  vs.                                       5:20-cv-630
                                                (MAD/PJE)

DR. ROBERT SILVERMAN; UNIVERSITY
OB/GYN ASSOCIATES, INC.; CROUSE
HEALTH HOSPITAL, INC.; and CROUSE
HEALTH SYSTEM, INC.,

                       **Defendants.**

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **LAW OFFICE OF DARTH M. NEWMAN LLC**<br>1140 Thorn Run Road, #601<br>Coraopolis, Pennsylvania 15108<br>Attorneys for Plaintiffs | **DARTH M. NEWMAN, ESQ.** |
| **NICHOLS KASTER PLLP**<br>4700 IDS Center<br>80 S. Eighth Street<br>Minneapolis, Minnesota 55402<br>Attorneys for Plaintiffs | **KATE FISHER, ESQ.**<br>**MATTHEW H. MORGAN, ESQ.**<br>**REBEKAH L. BAILEY, ESQ.** |
| **OFFICE OF THE UNITED STATES ATTORNEY**<br>James T. Foley U.S. Courthouse<br>445 Broadway, Room 218<br>Albany, New York 12207-2924<br>Attorneys for Plaintiffs | **ADAM J. KATZ, AUSA** |
| **OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL**<br>The Capitol<br>Albany, New York 12224<br>Attorneys for Plaintiffs | **EMILY L. AULETTA, AAG** |

| | |
|---|---|
| **BARCLAY DAMON LLP**<br>Barclay Damon Tower<br>125 East Jefferson Street<br>Syracuse, New York 13202<br>Attorneys for Defendant Silverman | **DAVID G. BURCH, JR., ESQ.**<br>**KYRA GANSWITH, ESQ.** |
| **LIPPES MATHIAS LLP**<br>507 Plum Street – Suite 310<br>Syracuse, New York 13204<br>Attorneys for Defendant University<br>OB/GYN Associates, Inc. | **LAURA L. SPRING, ESQ.** |
| **MCDERMOTT WILL & EMORY LLP**<br>200 Claredon Street – 58th Floor<br>Boston, Massachusetts 02116<br>Attorneys for Defendants Crouse Health<br>Hospital, Inc. and Crouse Health System, Inc. | **LAURA MCLANE, ESQ.**<br>**NATASHA L. DOBROTT, ESQ.**<br>**STACY A. LUTKUS, ESQ.**<br>**MEGAN CORRIGAN, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On May 6, 2020, Plaintiff and Relator Helene Bernstein, M.D., Ph.D. ("Relator") commenced this *qui tam* action on behalf of the United States of America and the State of New York (collectively, "Plaintiffs") asserting that Defendants University OB/GYN Associates ("University OB/GYN"), Crouse Health Hospital and Crouse Health System (together "Crouse"), and Robert Silverman, M.D. ("Dr. Silverman") (collectively "Defendants") submitted, or caused to be submitted, materially false bills for medical services which were not performed. *See* Dkt. No. 1. Relator also brought claims on her own behalf asserting that Defendants retaliated against her for reporting, attempting to stop, and refusing to participate in Defendants' "dangerous and fraudulent patient care." *Id.*

On December 15, 2023, Relator filed an amended complaint. See Dkt. No. 74. In her amended complaint, Relator asserts the following ten claims against Defendants: (1) presenting

2

false claims for payment under the False Claims Act (the "FCA"), 31 U.S.C. § 3729(a)(1)(A); (2) making false statements under the FCA, 31 U.S.C. § 3729(a)(1)(B); (3) conspiring to violate the FCA in violation of 31 U.S.C. § 3729(a)(1)(C); (4) presenting false claims for payment under the New York False Claims Act (the "NYFCA"), codified at New York Finance Law § 189(1)(a); (5) making false statements under the NYFCA, codified at New York Finance Law § 189(1)(b); (6) conspiring to violate the NYFCA in violation of New York Finance Law § 189(1)(c); (7) retaliation in violation of 31 U.S.C. § 3730(h); (8) retaliation in violation of New York Finance Law § 191; (9) a claim for retaliation in violation of New York Labor Law §§ 740, 741; and (10) filing reverse false claims in violation of 31 U.S.C. § 3729(a)(1)(G).  *See* Dkt. No. 74.

Thereafter, Defendants moved to dismiss Relator's claims.  *See* Dkt. Nos. 83, 84 & 86.  In a July 31, 2024, Memorandum-Decision and Order, the Court granted in part and denied in part the motions to dismiss.  Specifically, the Court granted the motions to dismiss as to the following claims: (1) Relator's reverse false claims and conspiracy claims against University OB/GYN; (2) Relator's reverse false claims, conspiracy claims, and New York Labor Law claims against Crouse; and (3) Relator's reverse false claims and conspiracy claims against Dr. Silverman.  *See* Dkt. No. 102 at 71.

On August 21, 2024, all Defendants filed answers with affirmative defenses.  *See* Dkt. Nos. 105, 106 & 107.  On September 7, 2024, Relator filed a motion to strike the affirmative defenses.  *See* Dkt. No. 111.  On September 11, 2024, Defendants filed amended answers, which primarily modified their affirmative defenses in response to Relator's motion.  *See* Dkt. Nos. 111, 112 & 113.  On October 2, 2024, Relator filed a second motion to strike, which Defendants have opposed.  *See* Dkt. Nos. 119, 121, 122 & 123.

For the reasons set forth below, Relator's motion to strike is granted in part and denied in part.

## II. BACKGROUND

For a complete recitation of the relevant background, the parties are referred to the Court's July 31, 2024, Memorandum-Decision and Order. *See* Dkt. No. 102.

## III. DISCUSSION

### A. Standard of Review

Rule 12(f) of the Federal Rules of Civil Procedure permits a district court to strike any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, motions to strike affirmative defenses are committed to the discretion of the district court, *see Town & Country Linen Corp. v. Ingenious Designs, LLC*, No. 18-cv-5075, 2020 WL 3472597, *5 (S.D.N.Y. June 25, 2020), and are "generally disfavored." *Alcon Vision, LLC v. Lens.com, Inc.*, No. 1:18-cv-407, 2022 WL 1665453, *3 (E.D.N.Y. May 25, 2022) (quoting *Silva v. Hornell Brewing Co.*, No. 20-cv-756, 2020 WL 8079823, *2 (E.D.N.Y. Dec. 1, 2020). "To succeed on a motion to strike an affirmative defense, 'a plaintiff must show that: (1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense.'" *Sec. & Exch. Comm'n v. Rayat*, No. 21-cv-4777, 2021 WL 4868590, *2 (S.D.N.Y. Oct. 18, 2021) (quoting *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 96 (2d Cir. 2019)); *accord Alcon Vision*, 2022 WL 1665453, at *3; *Town & Country Linen Corp.*, 2020 WL 3472597, at *5.

As to the first factor, the Second Circuit has clarified that "the plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense." *GEOMC*, 918 F.3d at 98. However, courts appropriately recognize that

"applying the plausibility standard to any pleading is a 'context-specific' task." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Where the pleading at issue is an affirmative defense, the pleader has typically had a limited period of time to respond to the complaint and formulate its affirmative defenses. "That aspect of the context matters," and, when considered together with "the nature of the affirmative defense," may warrant "a relaxed application of the plausibility standard." *Id.* Even under that "relaxed" application of the standard, however, a defendant must support its affirmative defenses with "some factual allegations to make them plausible." *Id.*; *see also E.E.O.C. v. Kelley Drye & Warren, LLP*, No. 10-cv-655, 2011 WL 3163443, *2 (S.D.N.Y. July 25, 2011) (holding that "affirmative defenses that contain only 'bald assertions' without supporting facts should be stricken") (quoting *Shechter v. Comptroller of City of New York*, 79 F.3d 265, 270 (2d Cir. 1996)).

As to the second factor, an affirmative defense should also be stricken if – regardless of how well pleaded – it is "a legally insufficient basis for precluding a plaintiff from prevailing on its claims." *GEOMC*, 918 F.3d at 98; *see also Alcon Vision*, 2022 WL 1665453, at *3; *Town & Country Linen Corp.*, 2020 WL 3472597, at *5. Lastly, whether prejudice "should be a basis for dismissing or opposing the addition of an otherwise valid affirmative defense" is dependent on whether the defense is presented in a timely manner. *GEOMC*, 918 F.3d at 98.

**B.    Application**[1]

### *1. Blanket Request*

Relator first contends that "all of the affirmative defenses raised by Defendants are mere recitations of legal concepts which plead no facts much less facts sufficient to establish the

---

[1] As Relator notes in her motion, Defendants raise may "similar or identical defenses" in their amended answers. *See* Dkt. No. 119-1 at 23 n.7. As such, where appropriate, the Court will address these similar or identical defenses together.

plausibility of the defense or provide Relator with sufficient notice of the defense and facts at issue." Dkt. No. 119-1 at 7.  Relator's blanket assertion that the Court should strike all asserted affirmative defenses, without providing argument or analysis as to the specific affirmative defenses, is without merit.  Accordingly, this aspect of Relator's motion to strike is denied.

### 2. Lack of Fraudulent Intent

Defendant Silverman's first affirmative defense reads as follows:

> With respect to Plaintiff's Personal and Qui Tam Claims, Dr. Silverman asserts that Plaintiff's damages, if any, were caused by the acts or omissions of individuals or entities other than Dr. Silverman.  Dr. Silverman did not have control of billing.  Dr. Silverman lacked fraudulent intent or knowledge and instead acted in good faith to ensure compliance with applicable federal, state, or local statutes to carry out his duties for which he was required to follow.  Plaintiff makes clear that the entities had control over the submission of billing and maintained the systems to do that.  Dr. Silverman reviewed images and tests, billing for the procedures was not under his control.  Dr. Silverman was also not Plaintiff's employer and did not have the power to act as such for the retaliation allegations.  Dr. Silverman expects discovery will provide additional facts supporting this defense.

Dkt. No. 114 at 63.  Relator contends that this defense combines several defenses, none of which are actionable. *See* Dkt. No. 119-1 at 10.  Specifically, Relator contends that the lack of fraudulent intent portion of this defense is legally meaningless because proving an FCA violation "'require[s] no proof of specific intent to defraud.'" *Id.* at 11 (quoting 31 U.S.C. § 3729(d)(1)(b)).

Defendant Silverman, however, contends that Relator has misconstrued this defense as a lack of intent defense, when in reality Defendant Silverman is simply alleging that "Plaintiff's damages, if any were caused by the acts or omissions of individuals or entities other than Dr. Silverman." Dkt. No. 123 at 10-11.  Defendant Silverman contends that the "statement on intent, compounded with the statements after, was only offered as additional allegations to mention that Dr. Silverman did not cause any of the damages, did not control billing, lacks fraudulent intent or

6

knowledge, and instead acted in good faith to ensure compliance with applicable laws." *Id.* at 11 (emphasis omitted). As such, Defendant Silverman asserts that this additional sentence was simply added to the amended answer to provide additional detail about an otherwise self-explanatory defense and was added in response to Relator's first motion to strike. *See id.*

The Court agrees with Defendant Silverman that this aspect of Relator's motion must be denied. Relator has misconstrued the affirmative defense as one asserting lack of fraudulent intent, wherein it actually is claiming that "Plaintiff's damages, if any were caused by the acts or omissions of individuals or entities other than Dr. Silverman." Relator has failed to provide the Court with any authority directing that such an affirmative defense should be stricken as a matter of law. *See Borowski v. Mordino*, No. 16-CV-999, 2020 WL 6083425, *1 (W.D.N.Y. Oct. 15, 2020) (holding that "'[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones'") (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).

Moreover, Relator has failed to identify how she will be prejudiced by the inclusion of this defense. Discovery in this matter will necessarily involve discovery into any alleged damages that were sustained by all Plaintiffs. As such, Relator's failure to demonstrate any prejudice provides an alternative ground for denying Relator's motion as to this affirmative defense.

For these same reasons, the Court denies this aspect of Relator's motion as it relates to Defendant University OB/GYN's thirteenth affirmative defense and Defendant Crouse's second affirmative defense.

### 3. Third Party Action and Lack of Control

Defendant Silverman's twelfth affirmative defense reads as follows:

7

> With respect to Plaintiff's Personal and Qui Tam Claims, Dr. Silverman asserts that Plaintiff's claims fail because his conduct did not cause or proximately cause any false claim or certification, or the alleged loss and/or damages, as he reviewed the tests and images and had no control over billing as entities and other individuals did. Dr. Silverman expects discovery will underscore facts. His actions also did not cause the alleged retaliation. Dr. Silverman expects discovery to show the actions, which Plaintiff calls retaliation, were caused by other entities, individuals, or due to Plaintiff's own actions.

Dkt. No. 114 at 67. Relator argues that this affirmative defense must be struck because "[i]t is no defense to a False Claims Act case that a particular defendant had no direct interaction with the government and therefore cannot be responsible for any claims made to the government. The United States Supreme Court long ago flatly rejected this argument." Dkt. No. 119-1 at 11 (citing *United States v. Bornstein*, 423 U.S. 303, 309 (1976); *U.S. ex rel. Marcus v. Hess*, 317 U.S. 537, 544 (1943)).

Initially, the Court notes that Relator fails to make any argument as to why this affirmative defense should be struck as it relates to Relator's retaliation claim. The Court agrees with Defendant Silverman that he is entitled to assert that he did not cause damages related to retaliation, but in the event there are damages, others may have. The Court also agrees with Defendant Silverman that this defense is permissible for Relator's *qui tam* claims. Liability exists under the FCA where a defendant "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3279(a)(1)(A). The focus of the FCA "remains on those who directly induce the submission of false or fraudulent claims." *Universal Health Servs. v. United States ex rel. Escobar*, 579 U.S. 176, 182 (2012). The twelfth affirmative defense states that Defendant Silverman's "conduct did not cause or proximately cause any false claim or certification, or the alleged loss and/or damages, as he reviewed the tests and images[.]" Dkt. No. 114 at 67. As such, this is a valid defense and will not be stricken. Additionally,

8

Relator has failed to articulate how she will be prejudiced by the inclusion of this affirmative defense, which further supports denying this aspect of her motion.

Accordingly, the Court denies Relator's motion insofar as she seeks to strike Defendant Silverman's twelfth affirmative defense, Defendant Crouse's fifth affirmative defense, and Defendant University OB/GYN's ninth affirmative defense.

### *4. Equitable Defenses*

Each of the Defendants have asserted that Relator's claims are barred by the equitable doctrines of waiver, laches, and/or equitable estoppel. *See* Dkt. No. 112 at 65-66; Dkt. No. 113 at 50; Dkt. No. 114 at 64. Defendant Silverman's second affirmative defense reads as follows:

> With respect to Plaintiff's Personal and Qui Tam Claims, Dr. Silverman asserts that Plaintiff's claims or entitlement to any judgment are barred by the doctrines of waiver, estoppel, and laches. For waiver, the claims are barred because there is no evidence that any payor would have declined to pay claims for fees to the entities as a result of the alleged conduct or that payors routinely declined to pay such claims as Dr. Silverman expects discovery to show and expand upon. For estoppel, Plaintiff's ability to pursue this action and/or retain any portion of the proceeds therefrom is barred in whole or in part, by the doctrine of estoppel for reasons including, but not limited to, that the Plaintiff did not make reports to Dr. Silverman at all let alone about fraudulent billing. Dr. Silverman expects information exchanged in discovery to show that the actions alleged were not retaliation, but rather valid actions necessitated to address for Plaintiff's actions. For laches, Plaintiff's ability to pursue this action and/or retain any portion of the proceeds therefrom is barred in whole or in part, by the doctrine of laches for reasons including, but not limited to, the fact that she alleged conduct as early as 2016 and even litigated related issued in a state court matter in 2019 asserting claims against parties not including Dr. Silverman, yet brought these claims in 2020.

Dkt. No. 114 at 64. Relator contends that equitable defenses are not available against the Government and that they fail as a matter of law as to Relator. *See* Dkt. No. 119-1 at 13-15.

Initially, the Court notes that although Relator generally alleges that equitable defenses do not apply to FCA claims, courts have held that waiver may apply in an FCA case. *See United States ex rel. Landis v. Tailwind Sports Corp.*, 308 F.R.D. 1, 5 (D.D.C. 2015). Although Relator alleges that it cannot apply here because the Attorney General did not waive the Government's claim, it is possible that discovery will reveal the Government did waive the *qui tam* claims allowing for the defense. *See United States ex rel. Mandel v. Sakr*, No. 17-cv-907, 2021 WL 1541490, *3 (W.D.N.Y. Apr. 20, 2021) (noting that waiver is generally an appropriate affirmative defense in an FCA case because the Attorney General can waive the Government's claims) (citation omitted); *see also Landis*, 308 F.R.D. at 5 (same). From a factual perspective, at this early stage of litigation, the possibility remains that discovery will reveal that the Government waived the *qui tam* claims, or that Relator waived her own retaliation claim. This defense is relevant to the case, does not prejudice Relator, and it is not redundant, immaterial, impertinent or scandalous. *See GEOMC*, 918 F.3d at 97-98.

As to equitable estoppel and laches, however, the Court agrees with Relator that these claims are inapplicable to the Government's claims in FCA litigation. *See United States v. Angell*, 292 F.3d 333, 338 (2d Cir. 2002) (holding that "laches is not available against the federal government when it undertakes to enforce a public right or protect the public interest"); *United States v. Manhattan-Westchester Med. Servs., P.C.*, No. 06 CIV.7905, 2008 WL 241079, *4 (S.D.N.Y. Jan. 28, 2008) (holding that the affirmative defenses of estoppel and laches are not available against the Government in an FCA case) (citing cases). Accordingly, the Court will grant this aspect of Relator's motion insofar as the defenses of laches and estoppel are asserted against the Government's claims. However, the defenses of waiver, estoppel, and laches are

available as to Relator's personal and state law claims and Relator has failed to present any argument as to why this aspect of these affirmative defenses should be stricken.

Accordingly, the Court grants in part and denies in part this aspect of Relator's motion. Specifically, the Court is granting the motion to strike the laches and estoppel affirmative defenses insofar as they assert these defenses to the Government's claims. The defenses of waiver as to all claims and parties, and the defenses of laches and estoppel as to Relator's personal and state law claims survive.

### 5. *Statute of Limitations*

Each of the Defendants have asserted a statute of limitations affirmative defense. Relator contends that "Defendants raised these statute of limitations in both rounds of pre-motion letters and on the first round of motions to dismiss. Defendants finally abandoned the issue on the final round of motions because it simply is not a live issue here. The [amended complaint], on its face, clearly meets every applicable statute of limitations." Dkt. No. 119-1 at 15.

Having reviewed the parties arguments, the Court denies this aspect of Relator's motion. As Defendants note, the statute of limitations may bar some of Relator's claims under the FCA and the New York Labor Law and Relator is not prejudiced by the assertion of this defense at this early stage of litigation. In her amended complaint, Relator asserts that she was constructively discharged on May 31, 2018. She also asserts that she engaged in certain protected activities between 2015 and 2017 and that Defendants subsequently took retaliatory actions against her. Since Plaintiff filed her complaint in this action June 2020, any alleged retaliatory actions that took place prior to June 2017 could be subject to dismissal under the applicable three-year statute of limitations. *See* 31 U.S.C. § 3730(h)(3).

Accordingly, the Court denies this aspect of Relator's motion to strike.[2]

### 6. Lack of Damages

Each of the Defendants have asserted an affirmative defense claiming that Relator's *qui tam* claims must be dismissed because the United States did not suffer any damages as a result of the alleged conduct. Relator contends that these affirmative defenses must be struck because damages are not an element of a claim under the FCA. *See* Dkt. No. 119-1 at 16-17.

Initially, as Relator herself notes, the Second Circuit has explicitly "declined to decide whether damage to the United States [is] a required element of the FCA." *United States ex rel. Feldman v. VanGorp*, 674 F. Supp. 2d 475, 481 (S.D.N.Y. 2009) (citing *Mikes v. Straus*, 274 F.3d 687, 695 (2d Cir. 2001), *abrogated on other grounds by Universal Health Servs., Inc. v. United States*, 579 U.S. 176 (2016)). Regardless of how this question is ultimately answered by the Second Circuit, this affirmative defense is appropriately pled. In an FCA case, a defendant may advance an argument aimed at barring recovery of any actual or treble damages that the relator cannot prove on behalf of the Government. *See United States ex rel. King v. Solvay S.A.*, 304 F.R.D. 507, 515 (S.D. Tex. 2015) (declining to strike defense of absence of damages for this reason). Moreover, discovery in this matter will necessarily include a determination of what damages, if any, the Government suffered as a result of the alleged violations. As such, Relator has failed to demonstrate any prejudice from the inclusion of this affirmative defense.

Accordingly, the Court denies this aspect of Relator's motion to strike.

---

[2] In his response to Relator's motion, Defendant Silverman notes that there is a typographical error in his third affirmative defense (statute of limitations), in that it states that the defense applies only to the *qui tam* actions, when he intended for it to apply to both the *qui tam* and Relator's personal claims. *See* Dkt. No. 123 at 13 n.4. As such, Defendant Silverman requests permission to file an amended answer to correct this mistake. Defendant Silverman's request is granted as to this limited request. No additional substantive changes shall be made to the amended answer absent permission from the Court.

### *7. Attorneys' Fees and Costs*

Each of the Defendants assert an affirmative defense contending that Relator is not entitled to attorneys' fees and costs because there is no basis for Relator's claims and that they are each entitled to attorneys' fees and costs because Relator's claims are frivolous. Relator contends that these affirmative defenses should be struck because, if she prevails either through trial or a settlement, there is no provision of the FCA that permits Defendants from "paying Relator her reasonable attorney's fees and costs." Dkt. No. 119-1 at 18. Further, Relator argues that Defendants are only entitled to attorneys' fees and costs if they both "prevail in the action" and the Court finds that the claim "was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." *Id.* (citing 31 U.S.C. § 3730(d)(4)).

This aspect of Relator's motion is denied. Relator acknowledges that she is only entitled to attorneys' fees and costs if she prevails and Defendants' affirmative defenses make clear that they believe that there is no basis in fact for her claims. As to an award of attorneys' fees and costs to Defendants, Relator argues that the defense is not applicable because "it seems unlikely this Action could be labeled 'clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment.'" Dkt. No. 119-1 at 18. Relator continues that "the defense must be struck at this time as it is, at best, premature." *Id.* Contrary to Relator's assertion, premature defenses can and often are included in answer to preserve the right to raise them later, and Relator's own argument outlines why the motion to strike this defense should not be granted because there is an open question as to the facts. Since no discovery has taken place in this case, it has yet to be determined whether Relator's claims are of merit or whether they could be considered frivolous, clearly vexatious, or brought primarily for the purpose of harassment.

Accordingly, the Court denies this aspect of Relator's motion to strike.

### *8. Negligence*

Relator argues that Defendants' affirmative defenses arguing that the claims are barred, in whole or in part, and any recovery should be diminished, reduced, or offset, due to the comparative and/or contributory negligence, fault, responsibility, or causation of others should be struck because (1) the defenses are inapplicable to intentional tort cases, and (2) there is no contribution defense to FCA claims. *See* Dkt. No. 119-1 at 18-19.

This aspect of Relator's motion is denied. Each of these affirmative defenses makes clear that this defense is targeted not at Relator's conduct, but third parties. *See, e.g.*, Dkt. No. 112 at 67 ("The claims asserted by Relator are barred, in whole or in part, and any recovery should be diminished, reduced, or offset, due to the comparative and/or contributory negligence, fault, responsibility, or causation of others. Relator's complaint makes clear that the alleged wrongdoing at issue in this case was not undertaken by Crouse, but by others. Crouse expects discovery to further underscore these facts"). It follows that Relator will not be able to prove the essential elements of her claims against a particular Defendant if others, and not that Defendant, engaged in the wrongdoing alleged. Further, Relator has not identified how she will be prejudiced by the inclusion of these affirmative defenses.

Accordingly, the Court denies this aspect of Relator's motion to strike.

### *9. Unjust Enrichment*

Each of the Defendants have asserted affirmative defenses arguing that Relator's personal and *qui tam* claims are barred, in whole or in part, because any recovery would result in unjust enrichment. Specifically, these defenses argue that there is no evidence that payors did not receive all of the services that each Defendant provided for which the alleged false claims were submitted. *See, e.g.*, Dkt. No. 114 at 68-69. The defenses further allege that discovery will

further establish this defense therefore rendering any recovery unjust because there were no false claims and because Relator was never retaliated against or engaged in a protected activity. *See id.* Relator contends that these affirmative defenses must be struck because unjust enrichment is a quasi-contract claim, which is inapplicable to the present matter. *See* Dkt. No. 119-1 at 20. Alternatively, Relator contends that these defenses could be read as alleging that there simply were both no false claims and no retaliation, which is merely a factual denial and not an appropriate affirmative defense. *See id.*

Although Defendants use the term "unjust enrichment" to label these affirmative defenses, the content of them makes clear that they are not attempting to assert a claim in quasi-contract. Rather, these defenses simply contend that discovery will establish that there were no false claims and that Relator never engaged in protected speech or was retaliated against. While this is essentially a denial of Relator's factual allegations and it is questionable whether these factual denials constitute true affirmative defenses, "courts in this Circuit generally will not 'strike even a seemingly redundant defense akin to a general denial in the absence of prejudice.'" *Kochan v. Kowalski*, 478 F. Supp. 3d 440, 452-53 (W.D.N.Y. 2020) (citations omitted). Inclusion of these defenses, while arguably redundant, causes no prejudice to Relator, inasmuch as they do not expand the scope of discovery or otherwise increase the complexity of the instant litigation.

Accordingly, the Court denies this aspect of Relator's motion to strike.

### 10. Underlying Violations of Reimbursement Requirements

Defendants Silverman and Crouse each bring affirmative defenses claiming that Relator's personal and *qui tam* claims "are barred under the Amended Complaint because there is no underlying violation of state or federal reimbursement requirements." Dkt. No. 114 at 69; *see also* Dkt. No. 112 at 67. Relator contends that these affirmative defenses must be struck because

she "need not prove any 'underlying violation of state or federal reimbursement requirements' to prevail on her retaliation claims." Dkt. No. 119-1 at 20.

As Defendants Silverman and Crouse note, to succeed on her retaliation claims under the FCA, Relator must prove that she engaged in protected activity and to be protected, this activity must be specifically directed at "exposing or deterring fraud." *Garcia v. Aspira of New York, Inc.*, No. 07-cv-5600, 2011 WL 1458155, *4 (S.D.N.Y. Apr. 13, 2011) (citations omitted). If Relator's purported protected activity were aimed at, for example, exposing quality of care deficiencies, and not fraudulent billing (*i.e.*, violation of reimbursement requirements), Relator will be unable to prove an element of her retaliation claims. Again, this affirmative defense is essentially a denial of Relator's factual assertions, which the Court declines to strike in the absence of prejudice, which has not been established here. *See Kochan*, 478 F. Supp. 3d at 452-53 (citations omitted).

Accordingly, the Court denies this aspect of Relator's motion to strike.

### 11. Failure to Join

Defendant Silverman's nineteenth affirmative defense provides as follows:

> With respect to Plaintiff's Personal and Qui Tam Claims, Dr. Silverman asserts that Plaintiff's claims and/or recovery of damages are barred or limited for the failure to join Upstate Medical University and/or Upstate University Hospital ("Upstate") despite allegations in the Amended Complaint identifying the entities. Dr. Silverman expects discovery will show any damages should be offset by the settlement award or potential bad faith. It is believed Plaintiff settled a prior related matter with Upstate, despite allegations in the Amended Complaint regarding Upstate, prior to commencing this action.

Dkt. No. 114 at 69. Relator contends that this affirmative defense should be struck because it is a naked legal conclusion and, "[t]o the extent he attempts to capture the import of Rule 19 the defense is misplaced and must be struck." Dkt. No. 119-1 at 21.

16

In response, Defendant Silverman argues that "[t]his defense is not brought under Rule 19, but rather a defense anticipating that discovery will show any damages should be offset by any potential prior settlement with Upstate, another entity or individual, or bad faith on behalf of Plaintiff to bring a separate suit and settle before brining this frivolous action[.]" Dkt. No. 123 at 19. Defendant Silverman contends that there "may have been a settlement with Upstate for some of the same conduct cited in the Amended Complaint, which would reduce any ultimate award[.]" *Id.*

As Defendant Silverman notes, Relator previously sued Upstate Medical University in Onondaga County Supreme Court in 2019, and that case eventually settled. Defendant Silverman contends that some of the allegations in that case are similar to allegations asserted in Relator's amended complaint in the present matter. Without the benefit of discovery, the Court is unable to determine whether any damages awarded in the present matter must be offset because of a prior settlement. Moreover, contrary to Relator's assertion, courts have found that a claimed offset to reduce damages may be pled as an affirmative defense. *See Fernandez v. Beehive Beer Distributing Corp.*, No. 12-cv-1968, 2017 WL 4155373, *3 (S.D.N.Y. Sept. 18, 2017) (holding that an offset may be pled as either an affirmative defense or a counterclaim) (citations omitted). Further, Relator has failed to identify how this affirmative defense causes any prejudice.

Accordingly, the Court denies this aspect of Relator's motion to strike.

### 12. Reservation of Rights/Catchall

Defendants have included a reservation of rights at the conclusion of their amended answers, which reserves their right to raise additional affirmative defenses that may become appropriate based on discovery in this matter. *See* Dkt. No. 112 at 69; Dkt. No. 113 at 52; Dkt. No. 114 at 69. Relator contends that these affirmative defenses should be struck because they fall

short of even the most basic of Rule 8's pleading requirements and fails to inform the Relator which defenses are being asserted. *See* Dkt. No. 119-1 at 22.

This aspect of Relator's motion is denied. The reservation of rights are simply statements of little if any legal effect, given that the right to amend one's answer is governed by Rule 15 of the Federal Rules of Civil Procedure. Moreover, even if they where they are articulated as affirmative defenses, they would not need to be stricken. *See Poyneer v. N.Y.S. United Teachers*, No. 5:22-cv-261, 2023 WL 236499, *2 (N.D.N.Y. Jan. 18, 2023) (denying the plaintiff's motion to strike the defendant's reservation of rights) (citation omitted). Finally, the Court notes that Relator has not identified how she is prejudiced in any way by the inclusion of the reservation of rights.

Accordingly, this aspect of Relator's motion to strike is denied.

### 13. Failure to State a Claim and Failure to Plead with Particularity

Relator contends that Defendant Crouse's affirmative defenses asserting failure to state a claim and failure to plead fraud with particularity must be struck because they are without legal basis since Crouse "ha[s] already litigated and lost these issues" following the denial of portions of its motion to dismiss. *See* Dkt. No. 119-1 at 24-25. Further, Relator contends that these affirmative defenses are not appropriate, relying entirely on caselaw from outside the Second Circuit. *See id.*

Courts in the Second Circuit have held that such defenses are "not vulnerable to motions to strike" and are appropriate to include with affirmative defenses because they are "analogous to a general denial [of liability] and [their] inclusion, although likely redundant, does not prejudice plaintiffs." *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 432 (S.D.N.Y. 2010) (collecting cases); *see also Olinsky & Assocs., PLLC v. Nutting*, No. 5:20-cv-1142, 2021 WL 2779001, *3

(N.D.N.Y. July 2, 2021); *Jane Street Group, LLC v. Millennium Mgmt. LLC*, No. 24-cv-2783, 2024 WL 3357005, *5 (S.D.N.Y. July 10, 2024) (declining to strike failure to state a claim affirmative defense since it is merely a denial of liability that causes no prejudice to the plaintiff); *Tal Dagan MD PC v. Resolutions Billing & Consulting, Inc.*, No. 24-cv-632, 2024 WL 5089276, *3 (S.D.N.Y. Dec. 12, 2024) (same). The Court agrees with these cases. These defenses, by their nature, do not expand the scope of the litigation or impose additional discovery burdens on Relator. *See id.*

Accordingly, the Court denies this aspect of Relator's motion to strike.

### *14. Clarification of University OB/GYN's Affirmative Defenses*

In her motion, Relator contends that, for some of its affirmative defenses, Defendant University OB/GYN "added the words 'Individual' and/or 'Qui Tam' but for others it left the language as 'Plaintiff's claims.'" Dkt. No. 119-1 at 26. Relator continues that, "[f]or those defenses where OB/GYN did not clarify which claims were at issue, Relator asks the Court to do it for them." *Id.*

In making this request, Relator provides the Court with little guidance, and simply provides her conclusions as to which affirmative defenses apply to Relator's personal claims and those which apply solely to the Government. The Court declines consider these conclusory requests to limit Defendant Crouse's affirmative defenses. Additionally, Relator has not identified how she would be prejudiced in any way if the Court declines to strike these affirmative defenses in part.

Accordingly, the Court denies this aspect of Relator's motion to strike.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, the Court hereby

**ORDERS** that Relator's motion to strike (Dkt. No. 119) is **GRANTED in part and DENIED in part**;[3] and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 24, 2025
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

---

[3] Relator's motion is granted as to the affirmative defenses asserting laches and estoppel as to the Government's claims (Defendant Silverman's second affirmative defense, Defendant University OB/GYN's eighth affirmative defense, and Defendant Crouse's tenth and eleventh affirmative defenses). Relator's motion is otherwise denied.