**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA and the STATE OF NEW YORK *ex rel.* DR. HELENE BERNSTEIN, MD, PhD,

Plaintiff-Relator,

v.

5:20-CV-00630 (MAD/PJE)

DR. ROBERT SILVERMAN;
UNIVERSITY OB/GYN ASSOCIATES, INC.,

Defendants.

---

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| Law Offices of Darth M. Newman LLC<br>P.O. Box 70<br>Wexford, Pennsylvania 15090<br>Attorneys for plaintiff Bernstein | DARTH M. NEWMAN, ESQ. |
| Nichols Kaster PLLP<br>4700 IDS Center<br>80 S. Eighth St.<br>Minneapolis, Minnesota 55402<br>Attorneys for plaintiff Bernstein | KATE FISHER, ESQ.<br>MATTHEW H. MORGAN, ESQ.<br>REBEKAH L. BAILEY, ESQ. |
| Office of the New York State<br>Attorney General<br>The Capitol<br>Albany, New York 12224<br>Attorney for Plaintiff<br>the State of New York | EMILY L. AULETTA, ESQ.<br>Assistant Attorney General |
| Barclay Damon LLP<br>Barclay Damon Tower<br>125 East Jefferson Street - 12th Floor<br>Syracuse, New York 13202<br>Attorneys for defendant Silverman | CHRISTINA M. VERONE JULIANO, ESQ.<br>DAVID G. BURCH, JR., ESQ. |

| | |
|---|---|
| Lippes Mathias LLP<br>507 Plum Street - Suite 310<br>Syracuse, New York 13204<br>Attorneys for defendant<br>University OB/GYN<br>Associates Inc. | LAURA L. SPRING, ESQ.<br>MINA N. MIRZAIE, ESQ. |

**PAUL J. EVANGELISTA**
**United States Magistrate Judge**

## MEMORANDUM-DECISION & ORDER

Presently pending before the Court is plaintiff-relator Dr. Helene Bernstein's ("relator") Motion to Compel, filed February 13, 2026, seeking to compel defendant University OB/GYN Associates, Inc. ("University") to take several actions in conjunction with relator's discovery demands in this action and University's subsequent objections. *See* Dkt. No. 164. University opposed relator's motion, *see* Dkt. No. 171-13, then supplemented that opposition, *see* Dkt. No. 189. Relator then filed supplemental briefing in support of its motion to compel, *see* Dkt. No. 192, and University filed a sur-reply, *see* Dkt. No. 196. For the following reasons, relator's motion to compel is granted in part and denied in part.

## I. **Background**

Familiarity with the facts and issues underlying this case is presumed; thus, the Court will repeat the relevant facts herein only as necessary to review the instant motion. Relator filed this lawsuit in June 2020 and filed an amended complaint in December 2023. *See* Dkt. Nos. 1, 74. She brought this action against defendants Silverman, University, Crouse Health Hospital, Inc., and Crouse Health System, Inc., as a *qui tam* action pursuant to the False Claims Act, 31 U.S.C. § 3729 *et seq.*, and the New York False Claims Act on behalf of the United States of America and the State of

New York, and on her own behalf as to retaliation claims. *See* Dkt. No. 74 at 1 ("Am. Compl."). The claims asserted arise out of defendants "submitting or causing to be submitted, materially false bills for medical services which were not performed and on Defendants' retaliation against Relator for reporting, attempting to stop, and refusing to participate in Defendants' dangerous and fraudulent patient care." *Id.* "In particular, [relator alleges that] Dr. Silverman often does not perform the physician reading, interpretation, evaluation, and management portion of the maternal ultrasound and fetal nonstress tests ordered for unsuspecting expectant mothers at Upstate University Hospital and Crouse Hospital." *Id.* at 1-2. Despite this, relator alleges that "Silverman attests to performing this work and he and the other Defendants bill, or cause to be billed, the United States and the State of New York as if the work had been completed." *Id.* at 2. Defendants filed a motion to dismiss, which was granted in part and denied in part. *See* Dkt. No. 102. Defendant Crouse Health Hospital, Inc. and defendant Crouse Health System, Inc. entered into a settlement agreement with relator and were terminated from this action. *See* Dkt. No. 198.

After a protracted period of discovery plagued by numerous extensions, motions, and substituted counsel, defendant University and relator are unable to agree on several discovery issues, prompting relator's motion to compel. *See* Dkt. No. 164-1. The parties generally dispute the sufficiency of University's objections and the extent to which subsequent deposition testimony affects the discovery analysis.[1] In addition to these overarching disputes, the parties principally dispute whether University must: (1)

---

[1] The Court notes that it has considered the arguments made in defendant's supplemental opposition, relator's supplemental filing in support of her motion, and defendant's sur-reply. However, for the sake of brevity, the Court will explicitly mention those documents only where the points raised materially alter the arguments made in the original briefing.

identify additional patients that are not known to relator; (2) produce information maintained by SUNY Upstate; (3) expand the relevant discovery period; (4) disclose information relating to procedures performed at "Suite 600"; and (5) provide more complete interrogatory responses to University's asserted defenses. *See generally* Dkt. No. 164-1. Given the variety of the arguments made with regard to each of these disputes, the Court will summarize the parties' arguments by dispute in due course.

## II. **Legal Standard**

### A. **Federal Rule of Civil Procedure 26**

Under Federal Rule of Civil Procedure ("Fed. R. Civ. P." or "Rule") 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Rule 26 instructs the court to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* "A district court has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) (citing *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008)). "The party seeking discovery bears the initial burden of proving the discovery is relevant . . . ." *Citizens Union of City of New York v. Att'y Gen. of New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017). "Once relevance has been shown, it is up to the responding party to justify curtailing discovery." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012).

> If a party objects to discovery requests, that party bears the burden of showing why discovery should be denied. *Freydl v. Meringolo*, 09 Civ. 07196(BSJ)(KNF), 2011 WL 2566087, at 3 (S.D.N.Y. June 16, 2011). Specifically, the resisting party must show how, "despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant, or how each request is overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence revealing the nature of the burden." *Sokol v. Wyeth, Inc.*, No. 07 Civ. 8442, 2008 WL 3166662, at 3 (S.D.N.Y. Aug. 4, 2008).

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 87 (S.D.N.Y. 2016).

## III. **Discussion**

### A. **General and Boilerplate Objections**

Relator first argues that the Court should overrule all of University's general and boilerplate objections, except as to privilege, on the grounds that University has not complied with Rules 33 and 34. *See* Dkt. No. 164-1 at 26. Specifically, relator asserts that University failed to state its objections with specificity. University counters, arguing that, although it has "used consistent language across multiple requests," it has also particularized its explanation of these grounds as they apply to each request. *See* Dkt. No. 171-13 at 26. The Court agrees with University.

"[B]oilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy while producing no documents and answering no interrogatories are a paradigm of discovery abuse." *Eiklor v. Lowe's Home Centers, LLC,* No. 2:21-CV-05082 (GRB/JMW), 2022 WL 16834574, at *1 (E.D.N.Y. Nov. 9, 2022) (internal quotations and citation omitted). "The party objecting to the discovery demands must, with some degree of specificity, illustrate the nature and extent of the burden of production." *Id.* (quoting *Barella v. Vill. of Freeport*, 296 F.R.D. 102, 105 (E.D.N.Y. 2013)). "The timeworn phrases of 'overbroad', 'undue burden', 'vague' and

'ambiguous' are not a safe harbor to one seeking to avoid production. Rather, those objections – if genuine – must be supported by a degree of specificity as to *why* they might be overbroad, an undue burden, vague or ambiguous." *Eiklor*, 2022 WL 16834574, at *1.

Here, defendants repeatedly objected to requests on the grounds that they are overbroad, unduly burdensome, disproportionate, not reasonably calculated to the discovery of admissible evidence, vague, and ambiguous. *See* Dkt. No. 164-1 at 26. That University raises the same issues regarding several of relator's requests does not, on its own, render the responses insufficiently unspecific. Here, "a review of Defendant's responses reveals that Defendant stated specific objections and responses to each request, produced responsive documents," and provided relator with sufficient information to enable her to narrow her requests based on those grounds. *Eiklor*, 2022 WL 16834574, at *2; *see, e.g.*, Dkt. No. 164-6. "It cannot be said that Defendant's objections amount to a 'blanket refusal to participate in discovery' or a 'paradigm of discovery abuse.'" *Eiklor*, 2022 WL 16834574, at *2. Accordingly, the portion of relator's motion seeking an order that wholesale overrules all of defendant's objections is denied.

### B. **Interrogatory Request No. 16–The Patient List**[2]

Relator next seeks to compel production of a requested patient list, sought via interrogatory request number sixteen, which stated: "Identify each patient for whom, during the Relevant Time Period, Dr. Silverman ordered, reviewed, validated, signed,

[2] Interrogatory Number "16" is originally listed as Interrogatory No. 15 in the original request, which is a typographical error since the true Interrogatory No. 15 preceded this one. *See* Dkt. No. 164-4 at 11. Thus, this should have been Interrogatory No. 16, which is how the parties refer to it in their motions. *See, e.g.*, Dkt. No. 164-1 at 12.

analyzed, or read any ultrasound or fetal non-stress test." Dkt. No. 164-4 at 11.

University responded with an objection, stating:

> University objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks, in part, information that is neither relevant to any party's claim or defense nor reasonably calculated to lead to the discovery of admissible evidence in this action. University also objects to the extent these Interrogatories are not tailored toward each specific Defendant or for which the information may be with the Entity Defendants. University objects to this interrogatory to the extent it seeks information about fetal non-stress tests performed at Crouse. University objects to the definition of "Relevant Time Period" as vague, overly broad, and encompassing information that is not relevant to any party's claim or defense, including information outside of the statute of limitations period.

Dkt. No. 164-6 at 12-13. The relevant time period objection will be discussed separately *infra*. Relator contends that the identities of patients who received the relevant procedures are necessary to investigate whether Dr. Silverman improperly validated examinations without reviewing the underlying diagnostic materials. Dkt. No. 164-1 at 14-15. The requested list would enable relator to identify additional medical records, audit trails, and witnesses with information concerning the alleged misconduct. *Id.* at 14. She argues that obtaining these identities is a necessary preliminary step because the hospitals cannot efficiently locate certain responsive records without knowing which patients are involved. *Id.* Relator is willing to further limit this request to patients with government payors. *Id.* She maintains that interrogatory sixteen is additionally limited by the relevant discovery period, the identity of the physician, and the two categories of procedures implicated in the complaint. *Id.* at 15. Relator argues that the requested information should be retrievable through searches or filters applied to the billing system, including: the rendering physician; procedure codes; and dates of service, thus the request would not impose any particularized or disproportionate burden. *Id.*

University argues that relator has not established a factual basis for investigating every ultrasound or nonstress test Dr. Silverman validated over the proposed discovery period and that relator is on a fishing expedition for additional misconduct rather than seeking to obtain evidence concerning sufficiently-identified claims. Dkt. No. 171-13 at 9-12. University further argues that production of information should be limited to the specific patients that relator identified in her amended complaint. *Id.* at 11. University argues that the burden of conducting this search is disproportionate to the likely benefit, particularly given what it considers the limited factual support for relator's allegations. *Id.* at 10-12. Lastly, University maintains that depositions taken subsequent to its original opposition further undermine relator's claims, and thus show that the benefit to burden ratio tilts more in favor of declining the motion to compel. *See generally* Dkt. No. 189-6. Ultimately, this dispute boils down to whether identification of the entire patient population, as limited by relator, constitutes relevant and proportional discovery into the alleged fraudulent practice, or an unduly burdensome investigation beyond the factual basis of the claims. To avoid the unachievable result of requiring relator to identify every patient who was part of this alleged scheme in order to open the doors of discovery, the Court grants relator's motion to compel the patient list.

Recently, the Second Circuit "join[ed] several of our sister circuits in expressly holding that for FCA claims involving fraudulent misstatements, where a relator pleads a complex and far-reaching fraudulent scheme with particularity, and provides *examples* of specific false claims submitted to the government pursuant to that scheme, a relator may proceed to discovery on the entire fraudulent scheme." *United States v. AmeriSourceBergen Corp.*, 191 F.4th 44, 53 (2d Cir. 2026) (internal quotation marks

and citation omitted). Although *AmeriSourceBergen* addressed the sufficiency of the pleadings, and the Second Circuit has not yet specifically addressed the scope of the discovery it alluded to, it follows that the relator must be permitted the opportunity to uncover information consistent with the fraudulent scheme in its allegations. *See id.* It appears that other courts to have considered this issue have similarly permitted broader discovery in FCA claims, rather than limiting it to the specific instances alleged in the complaint. *See United States ex rel. Polukoff v. Sorensen*, 2:16-cv-00304 (TA/DAO), 2020 WL 4904164, at *7 (D. Utah Aug. 20, 2020) (citation omitted) ("The specific examples of fraudulent behavior pled in the Complaint do not strictly limit discovery to those acts."); id. (quoting *United States ex rel. McCartor v. Rolls-Royce Corp.*, No. 1:08-cv-00133 (WTL/DML), 2013 WL 5348536, at *6 (S.D. Ind. Sept. 24, 2013)). ("Other courts have reached similar holdings, finding, for example, that a relator in a *qui tam* case should not be prevented 'from discovering other examples of behavior substantially similar to those described in the complaint and that similarly fit the pattern of conduct on which the complaint is focused.'").

University's argument that relator is entitled to discovery concerning only those patients whom relator can independently identify is unpersuasive. The amended complaint does not allege merely isolated instances of fraudulent conduct involving particular patients; rather, relator alleges that Dr. Silverman "regularly does not bother to view the study results," that multiple people observed this behavior over the course of years, and that the examples mentioned in the amended complaint are just that–examples. Dkt. No. 74 at 6, 28-39. Thus, relator alleges that Silverman routinely performed the treatment at issue as part of a broader fraudulent practice. Dkt. No. 164-

1 at 16. Accordingly, the identities of other patients who received that treatment from Silverman during the relevant period are relevant to determining the existence and extent of the alleged fraudulent scheme. *See United States ex rel. Pilat v. Amedisys, Inc.*, No. 17-CV-136 , 2025 WL 2962663 (JLS), at *1 (W.D.N.Y. Oct. 21, 2025). In addition, the discovery sought is limited to patients who received two particular treatments from only Dr. Silverman during a defined period. *See* Dkt. No. 164-6 at 12. Relator has further compromised, limiting that request to only those patients who had government payors. *See* Dkt. No. 164-1 at 14. Such limitations distinguish the request from an attempt to obtain unrestricted discovery concerning unrelated transactions or practices. *See United States ex rel. CKD Project, LLC v. Fresenius Med. Care AG & Co. KGaA*, 333 F.R.D. 25, 26-28 (E.D.N.Y. 2019) ("The thread running through these cases is straightforward: the discovery was limited to the universe of transactions about which the relator had knowledge or could plausibly allege were similar to those known transactions."). Although defendant may raise legitimate concerns regarding the burden of production, the mere fact that relator cannot independently identify every patient who received the treatment does not establish that the requested discovery is irrelevant or disproportionate under Rule 26(b)(1). Further, at this point, relator is requesting only the names of patients. The Court does not find that this request is unduly burdensome in light of the fact that University's corporate designee testified that University's billing system can generate "reports that would provide a list of patients, . . . for whom OB/GYN submitted a claim for a particular CPT code for a particular provider." Dkt. No. 192 (citing Deposition of corporate designee Breed).

Thus, the Court finds Interrogatory No. 16 to be relevant to the relator's FCA claims and proportional to the needs of the case. The Court therefore orders that University turn over the requested patient list, with the additional limitation that the list be confined to those patients who had government payors during the time period specified below in sub-section D. *See* discussion *infra* Section III.D.

C. **Whether University Must Produce Documents and Information Maintained by SUNY Upstate**

University made several objections to relator's discovery requests on the ground that it does not have responsive documents in its possession, custody, or control. *See, e.g.*, Dkt. No. 164-5 at 7. University argues that SUNY Upstate is a separate legal entity owning and controlling ClickView, Synapse/PACS, and Epic, which are the systems on which the requested documents are located. *See* Dkt. No. 171-13 at 12-14. University maintains that "it does not have legal control over documents maintained by Upstate, including email correspondence, . . . policies and procedures, . . . and medical records." *Id.* at 14. University argues that relator may pursue nonparty subpoena discovery directly with Upstate. *Id.* Relator argues that Rule 34 control includes situations where a party has a practical ability to obtain records, not only physical possession. Dkt. No. 164-1 at 17 (citing *Coventry Capital US LLC v. EEA Life Settlements Inc.*, 333 F.R.D. 60, 64 (S.D.N.Y. 2019)). Relator argues that University's operational relationship with Upstate, its routine use of Upstate systems, and reliance on Upstate IT establish University's ability to request and obtain responsive information. *See* Dkt. No. 164-1 at 17-19. She further argues that "just because [University] may need to coordinate with, or get permission or approval from, SUNY does not mean that [University] cannot obtain

the relevant information and records." Dkt. No. 164-1 at 18. Thus, relator asks the Court compel University to "attempt to gather and produce documents it has the practicable ability to obtain." The Court will do precisely that.

> Rule 34 permits a party to serve on another party information within such party's "possession, custody or control," subject to the restrictions of Rule 26(b). Rule 34 and the Advisory Notes to it are silent on what is meant by "possession, custody and control." Courts in the Second Circuit follow the so-called "practical ability" standard; that is, a party has "possession, custody, or control" over a document if it has the practical ability to obtain and produce the documents.

*Signify Holding B.V. v. TP-Link Rsch. Am. Corp.*, No. 21-CV-9472 (JGK/KHP), 2022 WL 3704001, at *2 (S.D.N.Y. Aug. 26, 2022) (citing, *inter alia*, *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007)). "In some cases, this means that a corporate party has the practical ability to obtain and produce documents held by a parent, subsidiary, or sister corporation." *Signify*, 2022 WL 3704001, at *2 (citing *S.E.C. v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 471 (S.D.N.Y. 2000)). "When a party contests that it has possession, custody and control of the relevant information, the requesting party has the burden of establishing possession, custody and control." *Signify*, 2022 WL 3704001, at *3 (citation omitted).

In *Rosehoff, Ltd. v. Truscott Terrace Holdings LLC*, the court considered whether a defendant had possession, custody, or control of an email server maintained by a non-party. No. 14-CV-277S(F), 2016 WL 2640351, at *5 (W.D.N.Y. May 10, 2016).[3] The court stated that "[e]vidence required to establish such practical ability to obtain documents includes 'cooperative agreements or contracts between the responding

[3] Although *Rosehoff* is decided in the context of a Rule 37(a)(5)(A) motion to compel sanctions, the court's analysis is equally applicable in the instant case, as the *Rosehoff* court was required to determine whether the defendant had a practical ability to obtain the information before deciding whether sanctions were appropriate. 2016 WL 2640351, at *5.

party and non-party, the extent to which the non-party has a stake in the outcome of the litigation, and the non-party's past history of cooperating with document requests." *Id.* (citation omitted). The court considered that the non-party had been responsive to the plaintiff's subpoenas, the defendant and the non-party had an on-going business relationship, and the defendant's "failure to make a[n] inquiry and request of [the non-party] in response to Plaintiff's document requests . . . ." as evidence that defendant may have had the practical ability to obtain the requested documents and that they had failed to comply with their Rule 34 obligations. *Id.*

Here, plaintiff has provided evidence that University has access to Upstate's policies, practices, manuals, email system, records, and equipment. *See* Dkt. No. 164-1 at 18. Further, relator has successfully subpoenaed some information from Upstate, despite University's objection, which suggests Upstate's willingness to cooperate. *Rosehoof*, 2016 WL 2640351, at *5. Although University references its "Provider Agreement" with Upstate, which states that the sought-after materials are not discoverable without Upstate cooperation, that is not the same as a showing the University lacks control over any of the information sought. *See* Dkt. No. 171-13 at 13. In fact, the Court reads this as an invitation from Upstate for University to collaborate with it on production of information. Lastly, "a finding of control is warranted 'where a corporate entity has the ability in the ordinary course of business to obtain documents held by another corporate entity.'" *Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*, No. 22-cv-9766 (LJL), 2023 WL 4029656, at *2 (S.D.N.Y. June 15, 2023) (quoting *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2010 WL 3173785, at *7 (E.D.N.Y. Aug. 11, 2010)). It appears that University, in the ordinary course of its business, has access

to the documents that Upstate holds and relator seeks since it is part of the Upstate network/server system. *See* Dkt. No. 164-1 at 17-18. At the very least, before imposing the burden on relator to issue non-party subpoenas, Rule 34, under these circumstances, requires University to make an inquiry to Upstate and request permission to disclose responsive information. *See Rosehoof*, 2016 WL 2640351, at *5; *see also Export-Import Bank of U.S. v. Asia Pulp & Paper Co., Ltd*, 233 F.R.D. 338, 341 (S.D.N.Y. 2005) ("Analyzing the practical ability of corporations to obtain work-related documents from former employees, courts insist that corporations, at the very least, ask their former employees to cooperate before asserting that they have no control over documents in the former employees' possession.). If, after this inquiry, University finds that it is unable to produce documents that are responsive to relator's requests, Upstate must submit a detailed affidavit to the Court explaining what steps it took to find or obtain the documents and why they could not be produced. *See Cooper Industries, Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 920 (S.D.N.Y. 1984).

D. **Appropriate Time Period**

Relator next argues that her definition of the time period at issue is both relevant and proportional and seeks to compel discovery during that period. *See* Dkt. No. 164-1 at 20. In her interrogatories and requests for documents, relator states, "Relevant Time Period: means June 2010 to the present." Dkt. No. 164-3 at 5; Dkt. No. 164-4 at 6. Defendant objects "to the definition of 'Relevant Time Period' as overly broad and seeks discovery of information outside of the statute of limitations." Dkt. No. 164-5 at 5. Relator's argument that the relevant discovery period should be based on the statute of limitations period, even if true, is erroneous because it is based on a misreading of 31

U.S.C. § 3731(b)(1). *See* Dkt. No. 164-1 at 20. Relator argues, "[i]n a *qui tam* suit, the statute of limitations dates back as far as 10 years before the filing of the case"; thus, relator "defined the Relevant Time Period accordingly, setting it to being in June 2010, which is 10 years before she initiated this action" and ends the relevant period "with Dr. Silverman's permanent retirement." *Id.* University argues that the relevant time period should be "the period of Relator's employment from 2015 to 2021." Dkt. No. 171-13 at 18. University further argues that "expanding discovery to cover an additional five years before Relator's employment would impose substantial additional burden with little corresponding benefit" since "Relator has not identified any specific patient, specific test, or specific billing submission from this pre-employment period that she seeks to investigate." *Id.*

"Limiting a relator's discovery rights to the duration of [the relator's] employment would weaken the [FCA] by placing limits on *qui tam* actions that do not exist for government-initiated actions." *United States ex rel. Pilat v. Amedisys, Inc.*, No. 17-CV-136-JLS(F), 2025 WL 2962663, at *3 (W.D.N.Y. Oct. 21, 2025) (citation omitted). "Moreover, court's [sic] 'have held that the temporal scope of discovery may extend beyond the dates relator is able to allege specific instances of misconduct for when the complaint plausibly alleges that the misconduct at issue was part of the defendant's broader policy and practice before and/or after the allegations of specific misconduct." *Id.* Further, Under 31 U.S.C. § 3731(b), a civil action under [the FCA] may not be brought:

> (1) more than 6 years after the date on which the violation of section 3729 is committed, or
> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of

> the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last.

31 U.S.C. § 3731(b) (formatting altered). "Section 3731(b) is, in part, a statute of limitations and, in part, a statute of repose." *United States ex rel. Wood v. Allergan, Inc.*, No. 19-CV-4029 (JMF), 2020 WL 3073293, at *3 (S.D.N.Y. June 10, 2020). The ten-year provision of the statute "is . . . a statute of repose insofar as it provides that 'in no event' may an FCA action be brought 'more than 10 years after the date on which the violation is committed.'" *Id.* Therefore, "the ten-year bar is a statute of repose paired with a shorter statute of limitations;" it is not a ten-year statute of limitations. *See id.* (quoting *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 135 S. Ct. 1970, 1974 (2015)) ("'[T]he FCA's statute of limitations provision' requires 'that a *qui tam* action must be brought within six years of a violation or within three years of the date by which the United States should have known about a violation,' and separately that '[i]n no circumstances . . . may a suit be brought more than 10 years after the date of a violation.").

Thus, although plaintiff contends that the relevant period should date back ten years from the date that she filed the action, she provides no principled reason for application of the repose provision in this case. The statute of limitations period in an FCA action is either six or three years, depending on the circumstances, but it is never ten years. The ten-year provision provides the point at which the action is barred, regardless of when the government had reason to know of the fraud. *See Wood*, 2020 WL 3073293, at *3. Thus, plaintiff's argument in favor of the relevant period being from June 2010 to present must be rejected as it is built on an erroneous foundation.

However, the Court still must determine what time period is relevant and proportional to the needs of the case. FED. R. CIV. P. 26(b)(1).

University's definition of the relevant time period is relevant and proportional to the needs of the case, albeit on a different theory than the one it proffers. Although the relevant period in a *qui tam* action under the FCA should not automatically correspond with the relator's period of employment, *Amedisys*, 2025 WL 2962663, at *3, it is equally clear that the allegations in the complaint guide the temporal scope of discovery, *id.* Here, relator offers three example patients to establish defendants' fraudulent conduct. The alleged fraud regarding patient number one took place around March 2016, *see* Am. Compl. at 29; the fraud regarding patient number two took place around August 2018, *see id.* at 32; and the fraud regarding patient number three took place around July 2016, *see id.* at 33.[4] Relator further alleged that she and others observed Dr. Silverman fraudulently attesting to having reviewed patient information, but nothing in the amended complaint suggests these observations took place before her employment. Further, the Court is unwilling to make the inferential leap that just because Dr. Silverman was allegedly engaged in fraud during the years mentioned in the complaint, he also must have been engaged in it earlier. Thus, the relevant time period, as suggested in the amended complaint, plausibly began in 2015. This is when the first allegation of fraud occurred and when relator first reported that fraud. *See id.* at 47. Nothing in the amended complaint indicates an earlier pattern of fraudulent conduct.

The Court reaches a similar result as to the argument that the discovery period should extend to the present. *See* Dkt. No. 164-3 at 5; Dkt. No. 164-4 at 6. As

[4] Relator offers fifteen other exemplar patients, included in the amended complaint by reference to Exhibit 7, all of whom underwent examination on July 28, 2016. *See* Am. Compl. at 34; Dkt. No. 74-7 at 1-39.

University points out, "[t]he only allegation that there were violations of the FCA after Relator was relieved of her clinical duties is the conclusory and arbitrary statement that Relator was informed that Dr. Silverman continued his earlier practice of attesting to completing patient care he did not in fact complete." Dkt. No. 171-13 at 18, n.2 (citing Am. Compl. ¶ 289). "In the context of the FCA, courts in other circuits have repeatedly found that rote allegations of 'ongoing' illegal activity, unaccompanied by allegations of specific instances of wrongdoing, are insufficient to justify discovery beyond the time period during which specific instances of wrongdoing have been alleged." *United States ex rel. Bilotta v. Novartis Pharms. Corp.*, No. 11 Civ. 0071 (PGG), 2015 WL 13649823, at *3 (S.D.N.Y. July 29, 2015) (collecting cases). "[D]iscovery may not be used as a fishing expedition to discover additional instances of wrongdoing beyond those already alleged," and the amended complaint does not allege any specific instances of wrongdoing either before relator's employment or after her termination. *Id.* Thus, although the Court decides that the relevant period is tied to the period of relator's employment, that is because relator has not alleged any instances of fraud either before or after her employment and therefore, "the requested discovery cannot be justified on the basis that it is necessary to 'flesh out' the allegations of illegal activity during the pre-20[15] and post . . . 20[21] period." *Id.* (citation omitted).[5]

---

[5] In section III.A, *supra*, the Court determined that discovery of the requested patient list was justified based on relator's allegations of specific instances of fraud. *See* discussion *supra* Section III.A. The Court here clarifies what may be perceived as an inconsistency in ruling that the allegations were sufficient to justify discovery in that sense, but insufficient as applied in the current discussion. The distinction is that plaintiff does plausibly suggest an on-going pattern of fraud during the period of her employment, which is supported with specific allegations. Those allegations are sufficient to justify discovery of the patient list, *during that same period.* However, those allegations are insufficient to justify discovery pre-dating or post-dating the period of those allegations.

Therefore, the Court finds that the appropriate discovery period runs from October 2015, the date on which relator began working at University, since specific allegations of fraud began shortly thereafter, through May 2021, the date relator was terminated, since she does not specifically allege any fraudulent conduct beyond that point. *See* Dkt. No. 74 at 7.

E. **Suite 600 Procedures**

Relator also seeks to compel University to turn over documents and information relating to procedures Dr. Silverman performed at "Suite 600." *See* Dkt. No. 164-1 at 23. University objects to the Suite 600 requests based on relevancy, asserting that "Suite 600 is not relevant to Relator's claims because Relator did not work at that location, did not observe any allegedly fraudulent conduct there, and did not allege in her FAC that any fraudulent activity occurred at Suite 600." *See* Dkt. No. 171-13 at 21. As an initial matter, the allegation that relator did not allege in her FAC that any fraudulent activity occurred at Suite 600 is patently false. In Exhibit 7, dkt. no. 74-7, which is referenced in, and attached to, the amended complaint, Patients six, ten, eleven, sixteen, and seventeen have listed as their exam site "Suite 600/MFM," and Dr. Silverman validated each of these examinations. *See* Dkt. No. 74-7. Further, in the amended complaint, relator stated that "based on the timing of the validation and the Ultrasonography workflow . . . Dr. Silverman spent less than 1 minute on all but one chart–not enough time to review the associated images" and cites to Exhibit 7 in support. *See* Am. Compl. at 34. Therefore, relator expressly implicated activity that occurred at Suite 600 in her fraud allegations. As discussed in Section III.A., "for FCA claims involving fraudulent misstatements, where a relator pleads a complex and far-

reaching fraudulent scheme with particularity, and provides *examples* of specific false claims submitted to the government pursuant to that scheme, a relator may proceed to discovery on the entire fraudulent scheme." *AmeriSourceBergen Corp.*, 191 F.4th at 53 (internal quotations and citation omitted). The Court again notes that, although *AmeriSourceBergen* was decided at a different procedural posture, the natural result is that discovery must be permitted regarding the entire scheme specifically alleged, confined by appropriate temporal limitations. Here, although relator may not have worked at Suite 600, she has alleged specific instances of misconduct at or implicating Suite 600 which make up part of the entire fraudulent scheme such that this Court can see no basis for deciding Suite 600 is irrelevant to her FCA action. "Relevancy continues to be 'broadly construed, and a request for discovery should be considered relevant if there is *any possibility* that the information sought may be relevant to the claim or defense of any party." *Breon v. Coca-Cola Bottling Co. of New England*, 232 F.R.D. 49, 52 (D. Conn. 2005). Certainly, information relating to Suite 600 meets that definition. Further, the Court finds that permitting discovery of information and documents related to Suite 600 is proportional to the needs of the case. First, the Court has declined to expand the relevant discovery period, which constrains the burden to defendant. Additionally, any such requests, as discussed *supra* in Section III.A. will be limited by the fact that only two types of treatment and one doctor are at issue, and of the information that meets that criteria, only patients with government payors are relevant. *See* discussion *supra* Section III.A. And, again, University's corporate designee testified that University's billing system can generate "reports that would provide a list of patients, . . . for whom OB/GYN submitted a claim for a particular CPT

code for a particular provider." Dkt. No. 192 (citing Deposition of corporate designee Breed). Thus, contrary to University's assertion, production of documents relating to Suite 600 will impose a minimal burden while offering a potentially-significant benefit. As such, relator's motion to compel information and documents relating to otherwise relevant patients who received the relevant testing at Suite 600 from Dr. Silverman is granted.

F. **Interrogatories No. 10, 12, 14, and Request Number 17**

Relator next seeks to compel responses to several interrogatories and one request for production, which University objected to as premature. *See* Dkt. No. 164-1 at 24. Relator argues that "[o]ver a year into discovery, [University] should at least attempt to satisfy the requests it initially objected to as premature." *Id.* University responds by arguing that the cases that relator relies upon "do not stand for the proposition that a defendant must articulate comprehensive factual bases for affirmative defenses before the opposing party has completed its own production, before depositions have been taken, and before third-party discovery has been obtained;" thus, it should not be forced to answer contention interrogatories before the close of discovery. *See* Dkt. No. 171-13 at 23. Relator used the interrogatories at issue to ask University to identify the factual basis for each affirmative defense it will assert, *see* Dkt. No. 164-6 at 10; information regarding any jobs that relator did not reasonably attempt to secure after being terminated, *see id.* at 11; and whether defendant believes that plaintiff engaged in any criminal, fraudulent, illegal, or unethical conduct, *see id.* at 12. Request number seventeen seeks any documents which support University's affirmative defenses. *See* Dkt. No. 164-5 at 12. To each of these, defendant responded by stating

that it objects to the interrogatory or request on the ground that it is premature where discovery is ongoing. *See, e.g.*, Dkt. No. 164-6 at 10.

As defendant asserts, interrogatories ten, twelve, and fourteen are "contention interrogatories" governed by Federal Rule of Civil Procedure 33, which provides:

> An interrogatory may relate to any matter that may be inquired into under Rule 26(b). An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.

FED. R. CIV. P. 33(a)(2). "Contention interrogatories are interposed to discover the theory of the responding party's case, elicit[ing] the responding party's contentions by asking it to state the factual basis underlying its substantive legal claims." *Mercer v. Rovella*, No. 3:16-CV-329 (CSH), 2022 WL 1540447, at *4 (D. Conn. May 16, 2022) (internal quotations and citation omitted) (alteration in original). "The provision of Rule 33 which 'allows courts to delay answers to contention interrogatories until at or near the close of discovery is appropriately invoked where it is clear that the responding party does not possess sufficient facts to formulate a response,'" and the "decision to delay is 'completely discretionary.'" *Id.* (quoting *Sheehy v. Ridge Tool Co.*, No. 3:05-CV-01614 (CFD), 2007 WL 1020742, at *2 (D. Conn. Apr. 2, 2007)). That discretion to delay is "appropriately invoked where it is clear that the responding party does not possess sufficient facts to formulate a response." *Mercer*, 2022 WL 1540447, at *5 (internal quotation and citation omitted).

> When the "court is convinced that the [non-answering party] possess[es] enough information to state the factual basis" for his claim or defense and "which statutes and regulations" pertain to his/her allegations, "[a] delay is not appropriate." On the other hand, "the court, in its discretion, may order responses to contention interrogatories, even in the early stages of

> discovery, where responses would assist in clarifying plaintiffs' allegations and identifying witnesses without imposing undue burdens on the responding party."

*Id.* (first quoting *Sheehy*, 2007 WL 1020742, at *2; then quoting *Weiss v. Nat'l Westminster Bank, PLC,* 242 F.R.D. 33, 64 (E.D.N.Y. 2007)).

In *Mercer*, the court required the objecting party to answer prior to the close of discovery questions that were "squarely within [defendant's] knowledge" while invoking its discretion to delay responses where certain facts "may lie within Plaintiff's knowledge and will be subject to discovery." *Mercer*, 2022 WL 1540447, at *5-6. Although there may have been some merit to University's original argument, made in its opposition, that these questions were premature since discovery had not progressed, *see* Dkt. No. 171-13 at 22-25, that train has left the station. University subsequently submitted its supplemental response in opposition to the motion to compel with nearly 1,700 pages of attachments to apprise the Court that "discovery has advanced substantially" and "significant developments have occurred," including that additional document production took place and various depositions were completed. *See* Dkt. No. 189-9 at 5-6. Most compelling to the Court is that University has completed its deposition of relator. *See id.* at 6. Based on these significant developments, the "court is convinced that the [University] possess[es] enough information to state the factual basis for his claim or defense and which statutes and regulations pertain to [its] allegations." *Mercer*, 2022 WL 1540447, at *5 (internal quotations and citation omitted) (first and third alterations added).

> Learning the bases which allegedly support Defendant's affirmative defenses would assist to clarify the allegations and identify witnesses who may provide information related to these defenses. Therefore, these contention interrogatories may be answered at this time and supplemented

> in the event additional responsive facts emerge during discovery.[6] The [relator's] motion to compel with respect to Interrogatories [10, 12, and 14] and their corresponding Requests for Production [No. 17] will be granted.[7]

*Id.*

G. **Remaining Issues**

Lastly, relator originally requested that the Court compel University to provide an amended verification from an appropriate informed agent. *See* Dkt. No. 164 at 11. This point is moot, as University has done so in response to the motion. *See* Dkt. No. 192 at 5. Additionally, relator requested that the Court "set monthly status conferences between the Court and the parties to discuss the status of discovery." *See* Dkt. No. 164 at 3. "The extremely broad discovery permitted by the Federal Rules depends on the parties' voluntary participation. The system functions because, in the vast majority of cases, we can rely on each side to . . . disclose relevant information when asked (and sometimes even before then) without being forced to proceed at the point of a court order." *Klipsch Grp. Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 631 (2d Cir. 2018). The Court is confident that the parties can proceed in accordance with that sentiment and without the monthly oversight of this very busy Court. Relator's request is therefore denied.

IV. **Conclusion**

Wherefore, for the reasons set forth above, it is hereby

---

[6] "The parties are reminded that pursuant to Rule 26(e)(1)(A), they have a continuing duty to update their disclosures in the event new information surfaces that would alter those responses." *Mercer*, 2022 WL 1540337, at *5, n.6.

[7] There appears to be a discrepancy between relator's motion to compel and University's opposition. While the motion to compel only identifies the interrogatories stated above, *see* Dkt. No. 164-1 at 21, the opposition additionally mentions Document Requests Numbers 1 and 16 and Interrogatory Number 7. *See* Dkt. No. 171-13 at 22. To the extent this decision is applicable to those questions, the parties should proceed consistent with this decision.

**ORDERED**, that plaintiff-relator's motion to compel interrogatory responses and documents, dkt. no. 164, is **GRANTED IN PART AND DENIED IN PART**, as set forth herein; and it is further

**ORDERED,** that defendant University OB/GYN Associates, Inc., will supplement its interrogatory and document demands, at least two-weeks in advance of any depositions or Court filings, and in no event later than **forty-five (45) days** of the filing date of this Memorandum-Decision & Order, as set forth herein; and it is further

**ORDERED**, that the Clerk of the Court serve this Memorandum-Decision & Order on parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: November 24, 2026
Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge